<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CATHY HARTNEY, JENNIFER ROMOLO, KRISTIN JOHNSON, ASHLEY LEVERNEZ, DEBRA FLASKA, PRATIBHA PRINCE, ASHLEIGH BOHLMAN, and VINCENTA WOLFE, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>ZOETIS, INC.,<br><br>                Defendant. | Civil Action No. 24-9698 (SDW) (AME)<br><br>**OPINION**<br><br>October 15, 2025 |

**WIGENTON**, District Judge.

Before this Court is Defendant Zoetis, Inc.'s ("Zoetis" or "Defendant") Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint (D.E. 35 (the "TAC")) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and to strike class allegations. (D.E. 39 ("Motion").) Jurisdiction is proper pursuant to 28 U.S.C. §§ 1332(d)(2)-(6) and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court considers this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**, and the Third Amended Complaint is hereby **DISMISSED WITHOUT PREJUDICE**.

I. **BACKGROUND**

This putative class action arises from the administration of Librela, a monoclonal antibody marketed by Zoetis for the control of osteoarthritis-related pain in dogs. Eight named Plaintiffs

bring claims on behalf of themselves and a proposed nationwide class, alleging that Zoetis misrepresented Librela's safety, failed to warn veterinarians and pet owners about severe adverse events, and breached various statutory and common-law duties. The Plaintiffs' causes of action include failure-to-warn, design defect, breach of express and implied warranties, consumer fraud violations under several state statutes, fraud, negligent misrepresentation, and unjust enrichment.

### A. Factual History[1]

#### a. Librela and Reported Adverse Events

Librela is a long-acting monoclonal antibody (bedinvetmab) administered by monthly injection for the management of osteoarthritis in dogs. (TAC ¶¶ 1–2.) According to the TAC, thousands of adverse events have been reported following Librela injections, including neurological injuries such as ataxia, convulsions, and proprioception abnormalities; musculoskeletal injuries such as lameness, muscle tremors, and paresis; hepatic and pancreatic injuries characterized by elevated liver enzymes or pancreatitis; and death. (*Id.* ¶ 1.) There is no antidote for the drug once administered. (*Id.* ¶ 2.)

Plaintiffs allege that Zoetis failed to inform consumers and veterinarians about these dangers and misrepresented Librela as being safe for dogs. (*Id.* ¶ 4.) The TAC asserts that the product's warning label, as well as advertising and promotional materials, including direct-to-consumer marketing, failed to warn that Librela could cause the adverse events described above. (*Id.*) Zoetis allegedly continued to tout Librela's safety even after an FDA-mandated label change in January 2025, which added certain warnings. (*Id.* ¶ 5.) Plaintiffs contend that further warnings regarding liver and pancreas risks may still be required. (*Id.*) Plaintiffs further allege

---

[1] The facts set forth in this section are drawn from the Third Amended Complaint and are presumed true solely for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

that adequate warnings would have altered both veterinarians' prescribing decisions and pet owners' consent, and that Zoetis's misrepresentations caused them to purchase Librela injections they otherwise would not have. (*Id.* ¶¶ 6–7.) The cumulative effect of these misrepresentations has allegedly resulted in millions of dollars in costs for pet owners, including the price of the injections, veterinary expenses, and in some cases the loss of their dogs. (*Id.* ¶ 9.)

      b. *Allegations of the Named Plaintiffs*

The TAC details the experiences of eight named plaintiffs from various states. (*See generally id.* ¶¶ 10–75.) Cathy Hartney, a resident of Florida, consented to a Librela injection for her dog Jake based on Zoetis's representations that the drug was safe. Within days, Jake developed increased thirst, decreased appetite, limited mobility, and worsening pain; he ultimately had to be euthanized. Hartney alleges that she spent money on the injection and subsequent veterinary care and would not have consented to Librela had she known the risks. (*Id.* ¶¶ 10–17.)

Jennifer Romolo, an Illinois resident, consented to a Librela injection for her dog Blue. She similarly alleges that Zoetis's marketing led her to believe the drug was safe. After the injection, Blue experienced decreased appetite, increased thirst, vomiting, lethargy, anemia, and a rash. Romolo contends that she incurred veterinary expenses and emotional distress and would not have chosen Librela if adequately warned. (*Id.* ¶¶ 18–25.)

Kristin Johnson, a resident of Texas, administered Librela to her two golden retrievers, Dixie and Jack, over several months. She alleges that one dog developed deafness and bowel control issues and the other suffered ataxia, hind leg weakness, and growths. Despite treatment, Jack ultimately died. Johnson asserts that she paid for multiple injections, incurred veterinary costs, and endured emotional anguish. (*Id.* ¶¶ 26–35.)

Ashley Levernez, another Texas resident, claims that her Australian shepherd Maisley

developed inappetence, increased pain, muscle atrophy, ataxia, and eventually hind leg paralysis following Librela injections. She alleges that despite treatment, Maisley's condition deteriorated, and she incurred significant medical expenses. (*Id.* ¶¶ 36–43.)

The TAC contains analogous narratives for the remaining Plaintiffs — Debra Flaska of California, Pratibha Prince of Missouri, Ashleigh Bohlmann of Virginia, and Vincenta Wolfe of New Jersey — all of whom allege that they relied on Zoetis's representations, consented to Librela injections, and later witnessed their dogs suffer severe adverse events. (*Id.* ¶¶ 44–75.) Each Plaintiff contends that adequate warnings would have prevented their consent and that they incurred economic losses and emotional harm as a result. The TAC further alleges that Plaintiffs reported their dogs' adverse events to Zoetis and the FDA and that Zoetis continued to market Librela as safe despite these reports.

    c. *Marketing and Regulatory History*

Plaintiffs allege that veterinarians use a wide variety of products to maintain animal health and safety, and that the consumer market for pet medication is substantial. (*Id.* ¶ 88.) In 2021, the global animal health market was valued at nearly $40 billion, with the United States accounting for about one-third of that figure, or roughly $13 billion. (*Id.* ¶ 89.) Plaintiffs allege that pet owners rely on these products to prevent and treat numerous illnesses, and their willingness to spend is heightened by the strength of the human–animal bond. Studies show that 95% of dog and cat owners view their pets as family members, and a majority report that they would pay whatever is necessary to secure veterinary care for them. (*Id.* ¶¶ 90–91.) In 2021 alone, Americans spent approximately $103 billion on their pets, with significant portions devoted to veterinary care and medications. (*Id.* ¶ 92.)

Dogs, like humans, suffer from a range of diseases, including osteoarthritis, which is the most common canine joint disease. (*Id.* ¶¶ 93–94.) Librela is a monoclonal antibody therapy designed to block nerve growth factor ("NGF"), a protein associated with pain transmission. (*Id.* ¶ 95.) It was approved in the European Union in November 2020 and in the United States in May 2023. (*Id.* ¶ 96.) However, Plaintiffs allege that, even prior to its U.S. approval, adverse events had been reported among dogs treated with NGF inhibitors, and that the FDA has since received more than 10,000 reports of adverse events related to Librela. (*Id.* ¶¶ 97–99.) Adverse effects described by consumers include lameness, loss of appetite, vomiting, diarrhea, lethargy, seizures, organ damage, and death. (*Id.* ¶ 98.)

Despite these adverse effects, Plaintiffs claim that Zoetis launched an extensive marketing campaign portraying Librela as safe and effective. Librela was marketed directly to consumers through television, digital, and print advertising, as well as through targeted messaging to veterinarians. Promotional examples include advertising materials and sponsored educational content. (*Id.* ¶¶ 100–102.) Plaintiffs contend that these materials misrepresented Librela's safety profile and downplayed or omitted known risks. The original Librela product label is alleged to have been inadequate because it did not disclose the full scope of adverse events reported. (*Id.* ¶ 103.)

Since Librela's release, thousands of reports of serious adverse incidents including death have been submitted, and Plaintiffs allege the actual number of adverse events exceeds what has been formally reported. (*Id.* ¶¶ 104–105.) On November 20, 2023, the FDA's Center for Veterinary Medicine issued a notification to Zoetis in response to the volume of reports concerning Librela. (*Id.* ¶ 106.) Nonetheless, Plaintiffs assert that Zoetis continued to expand marketing of Librela and did not revise its labeling or advertising to adequately warn of risks. (*Id.* ¶¶ 100–106,

5

144.)

B. Procedural History

Plaintiffs filed the initial complaint (D.E. 1) in this matter in October 2024. They filed the First Amended Complaint (D.E. 18) on November 6, 2024, and the Second Amended Complaint upon stipulation on November 20, 2024. Then, owing to "new facts regarding recent actions taken by the Food and Drug Administration relevant to this litigation," the parties stipulated to the filing of the Third Amended Complaint on March 14, 2025. Shortly thereafter, Zoetis moved to dismiss the TAC in its entirety and to strike the class allegations. The parties timely completed briefing. (D.E. 39-1; 40; 43.)

II. **LEGAL STANDARD**

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a motion to dismiss pursuant to Rule 12(b)(6), a district court must conduct a three-step analysis. First, it must "tak[e] note of the elements a plaintiff must plead to state a claim." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (alteration in original) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). Second, the court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). Third, the court assumes the veracity of all well-pleaded factual allegations, "constru[es]

6

them in the light most favorable to the plaintiff, and draw[s] all reasonable inferences in the plaintiff's favor." *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022). "If, after completing this process, the complaint alleges 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements of a claim, then it plausibly pleads a claim." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 556). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III. DISCUSSION

#### A. Failure to State a Claim

##### a. *Consumer Protection and Fraud Claims (Counts 1-7)*

Counts 1 through 7 of the TAC assert statutory consumer protection claims on behalf of the named Plaintiffs and putative subclasses: violation of the New Jersey Consumer Fraud Act on behalf of a nationwide class (Count 1), violation of the NJCFA on behalf of a New Jersey subclass (Count 2), violation of California's Consumers Legal Remedies Act (Count 3), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count 4), violation of Missouri's Merchandising Practices Act (Count 5), violation of Texas's Deceptive Trade Practices–Consumer Protection Act (Count 6), and violation of Virginia's Consumer Protection Act (Count 7). Although these statutes differ in detail, all of them generally require Plaintiffs to allege unlawful or deceptive conduct, actual reliance or causation, and some form of ascertainable loss or damages. *See, e.g., Sun Chemical Corp. v. Fike Corp.*, 235 A.3d 145 (N.J. 2020) (NJCFA requires unlawful

conduct, an ascertainable loss, and a causal relationship); *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1201 (N.D. Cal. 2014) (CLRA requires an unlawful act, reliance, damages, and causation); *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005) (ICFA requires a deceptive act, intent that plaintiff rely on deception, actual damages, and causation); *Diesel v. Mariani Packing Co. Inc.*, Civ. No. 22-1368, 2024 WL 1674520, at *5 (E.D. Mo. Apr. 18, 2024) (2020 MMPA amendment requires showing reasonable person would rely on the unlawful act to enter into transaction); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996) (DTPA requires consumer status, deceptive conduct, and producing cause); *Snider v. Hostess Brands, LLC*, Civ. No. 20-516, 2021 WL 311871, at *2 (W.D. Va. Jan. 15, 2021) (VCPA requires reliance).

The TAC fails to satisfy these requirements. It does not identify any affirmative misrepresentation by Zoetis that any Plaintiff saw, nor does it describe the content of any representation made by veterinarians. Plaintiffs' generic assertion that they "believed Librela was safe" is too conclusory to plead reliance or causation under any of the state statutes. The TAC also fails to allege an ascertainable loss beyond the cost of the injections; it does not quantify the difference between the value promised and the value received.

The New Jersey Supreme Court has explained that claims alleging inadequate warnings must be brought under the NJPLA rather than the NJCFA, unless plaintiffs plead affirmative misrepresentations distinct from a failure-to-warn theory. *See Sun Chemical*, 235 A.3d. at 155. Plaintiffs' consumer protection theories are not readily distinguishable from their product liability claims. Nevertheless, Plaintiffs are permitted to assert alternative theories of liability at the pleading stage, even if those theories are logically inconsistent. *Id.* Thus, Plaintiffs may reassert consumer protection claims in the alternative to their product-liability claims, provided they satisfy each state's pleading requirements and allege affirmative misrepresentations distinct from the

8

alleged failure to warn. They should be aware, however, that the NJPLA and similar statutes will ultimately preclude recovery on duplicative consumer fraud theories, and Plaintiffs will not be able to obtain relief simultaneously under both statutes if the claims depend on the same underlying facts.

      b.     *New Jersey Products Liability Act (Count 8)*

Count 8 is brought under the New Jersey Products Liability Act ("NJPLA"), which provides that a manufacturer or seller is liable only if a product was (a) manufactured in a way that deviated from the defendant's design specifications; (b) sold without adequate warnings or instructions; or (c) designed in a defective manner. N.J. Stat. Ann. § 2A:58C-2. Plaintiffs allege that Zoetis "designed, manufactured, and sold Librela" despite knowing it "creates a risk of adverse reactions in dogs," that the drug "failed to contain adequate warnings," and that it was "unsafe as designed, manufactured, marketed, and sold." (TAC ¶ 345–46.) As pled, this Court does not understand Plaintiffs to be making a claim that Librela suffered from a manufacturing defect. Rather, Plaintiffs allege both that Librela was defectively designed and utilized defective warnings. Also, at the outset, whether the NJPLA governs claims by Plaintiffs from other states is a choice-of-law question that cannot be resolved on the pleadings. *See Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) ("Applying the factors necessary to determine choice of law . . . is a very fact-intensive inquiry") (citing *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009) (postponing choice of law analysis "until the parties present a factual record full enough")).

Plaintiffs allege that Librela's labeling omitted critical risks and that Zoetis's marketing misled veterinarians and owners. Under the learned-intermediary doctrine, a drug manufacturer satisfies its duty to warn by providing an adequate warning to the prescribing professional —

9

here, a veterinarian — who in turn conveys risks to the patient's owner. *See Niemiera v. Schneider*, 555 A.2d 1112, 1116 (N.J. 1989) (doctrine applies to physicians because they exercise professional judgment). To state a claim, Plaintiffs must allege that the warning to veterinarians was inadequate and that a different warning would have altered the prescribing decision. *See Perez v. Wyeth Labs. Inc.*, 734 A.2d 1245, 1256 (N.J. 1999). The TAC does not meet these requirements. It does not allege that veterinarians relied on any specific Zoetis materials, nor does it identify any advertisement Plaintiffs saw. Plaintiffs invoke the direct-to-consumer advertising exception recognized in *Perez*, but they do not plead reliance on any identified advertisement, so the exception does not apply. Further, the NJPLA provides a rebuttable presumption that an FDA-approved warning is adequate. N.J. Stat. Ann. § 2A:58C-4. To overcome it, plaintiffs must allege deliberate concealment or nondisclosure of post-approval risk information. *See McDarby v. Merck & Co.*, 949 A.2d 223, 271 (N.J. Super. Ct. App. Div. 2008). The TAC points to a January 2025 label change but alleges no facts showing Zoetis withheld newly discovered risks. Accordingly, the failure-to-warn component of Count 8 is dismissed.

Plaintiffs also allege that Librela was defectively designed because safer alternatives existed. Zoetis argues that this theory is preempted. Once the FDA approves a drug, federal law prohibits unilateral changes to its formulation. *See Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 475 (2013). Courts have rejected pre-approval design defect claims for the same reason: they require speculation that the FDA would have approved a different formulation and that plaintiffs would have used it. *See Yates v. Ortho-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281, 299–300 (6th Cir. 2015). Although one decision in this district permitted such a theory where plaintiffs identified an alternative later approved by the FDA, *see Gaetano v. Gilead Scis., Inc.*, 529 F. Supp. 3d 333 (D.N.J. 2021), Plaintiffs here do not identify any such alternative.

Even absent preemption, the NJPLA requires plaintiffs to plead either a feasible alternative design or that the product's risks outweigh its utility. *See Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 823 (D.N.J. 2019). Plaintiffs assert only that Librela was "unreasonably dangerous" without proposing any alternative formulation, dosage, or delivery system. Plaintiffs here also do not allege that Librela's risks outweigh its benefits or that they seek its removal from the market. Those allegations are too bare to state a claim. Accordingly, the design defect component of Count 8 is dismissed.

    c.    *Warranty Claims (Counts 9-10)*

Counts 9 and 10 assert claims for breach of express warranty and breach of implied warranty of merchantability and fitness for a particular purpose. Zoetis argues that these warranty claims are subsumed by the NJPLA, require privity and pre-suit notice, and lack particularity. Because the TAC asserts a nationwide class, the Court must also consider variations among state laws. The warranty claims are dismissed for the reasons explained below, but this Court acknowledges that Plaintiffs may continue to re-plead them in the alternative should it later determine that the NJPLA does not apply to all nationwide plaintiffs.

    i.    *Express Warranty (Count 9)*

An express warranty arises when the seller makes an affirmation of fact, promise, or description of the goods that becomes part of the basis of the bargain. *See* U.C.C. § 2-313. Plaintiffs allege that Zoetis warranted Librela to be "safe and effective," but they identify no advertisement, label, or promotional statement containing such a representation. Courts require more specificity: who made the statement, its content, when it was made, and that it formed part of the bargain. *See* N.J. Stat. Ann. § 12A:2-313; *Weinstat v. Dentsply Int'l, Inc.*, 103 Cal. Rptr. 3d 614, 628 (Cal. Ct. App. 2010); *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1057

11

(Ill. App. Ct. 2007). Plaintiffs allege only that they "believed Librela was safe," which does not suffice.

Further, many jurisdictions require pre-suit notice of breach. *See* N.J. Stat. Ann. § 12A:2-607(3)(a); Cal. Com. Code § 2607(3)(A); 810 Ill. Comp. Stat. 5/2-607(3)(a); Mo. Rev. Stat. § 400.2-607(3)(a); Tex. Bus. & Com. Code § 2.607(c). In Illinois, for example, failure to provide notice bars an express warranty claim absent an exception for personal injury. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 589 (Ill. 1996). Plaintiffs plead no notice to Zoetis. Privity, or lack thereof, may present an additional barrier. For example, Virginia requires privity of contract for breach-of-warranty claims. *See* Va. Code Ann. § 8.2-318. Plaintiffs do not allege that they purchased Librela directly from Zoetis, but rather received it through veterinarians. Absent privity, warranty claims are generally barred.

Accordingly, Count 9 is dismissed. Should Plaintiffs pursue this theory in the alternative, they must identify the specific warranty language on which they relied, allege facts establishing notice and privity (or allege why an exception is appropriate under these circumstances), and explain how the alleged warranty differs from their NJPLA failure-to-warn theory.

ii. *Implied Warranties (Count 10)*

Plaintiffs also allege breaches of the implied warranties of merchantability and fitness for a particular purpose. To state such a claim, they must allege that Librela was unfit for its ordinary use or for a particular purpose that was communicated to Zoetis. *See* U.C.C. §§ 2-314, 2-315; *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 704 (D.N.J. 2011). The TAC does not plausibly allege either. Count 10 is therefore dismissed. Plaintiffs may reassert the claim in the alternative if they can allege facts showing how the implied warranty theory differs from their product liability claims.

### d. Negligence (Count 11)

Plaintiffs allege that Zoetis failed to exercise reasonable care in testing, marketing, and selling Librela, including by inadequately testing the drug and withholding results. To the extent this theory rests on Zoetis's alleged failure to submit information to the FDA, it is preempted under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350–51 (2001), which bars "fraud-on-the-FDA" claims. Further, negligence claims based on product defects are subsumed by the NJPLA. The New Jersey Supreme Court has held that the NJPLA provides the exclusive remedy for harm caused by defective products. *See Sinclair v. Merck & Co.*, 948 A.2d 587, 595 (N.J. 2008). Plaintiffs identify no defect in Librela's design or manufacture beyond their failure-to-warn theory, and they do not plead facts showing that stronger warnings would have altered veterinarians' prescribing decisions. The learned-intermediary doctrine therefore bars their negligence claims as pled.

Because Plaintiffs allege no duty or breach independent of product-liability principles, Count 11 is dismissed without prejudice. Plaintiffs may replead negligence in the alternative if they can allege a duty distinct from the NJPLA, and such claims may be viable under other states' laws if the NJPLA is ultimately found inapplicable.

### e. Unjust Enrichment (Count 11)

The unjust enrichment claim fails because Plaintiffs plead no facts beyond those underlying their statutory and product-liability theories, and they do not allege why legal remedies would be inadequate. *See, e.g., Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 814 (D.N.J. 2000). Count 12 is therefore dismissed without prejudice.

### f. Motion to Strike Class Allegations

Zoetis urges the Court to strike the class allegations, arguing that individualized questions

of causation, reliance, and state law differences preclude class certification. While this Court agrees that differences among state laws and the necessity of individualized determinations may pose hurdles down the road, it is premature to rule on class certification at the pleading stage. *See Landsman & Funk PC v. Skinder-Strauss Associates*, 640 F.3d 72 (3d Cir. 2011) ("To determine if the requirements of Rule 23 have been satisfied, a district court must conduct a rigorous analysis . . . In most cases, some level of discovery is essential to such an evaluation.") Discovery may shed light on whether common issues predominate, and this Court will not preemptively deny Plaintiffs the opportunity to seek class certification. *See Austin v. Invention Submission Corp.*, 2020 WL 2771076, at *10 (W.D. Pa. Apr. 13, 2020) ("Because discovery is essential to determining whether a case can be maintained as a class action, a motion to strike that is filed before a plaintiff has moved to certify a class is premature.") (citing *Gray v. BMW of North America, LLC*, 22 F.Supp.3d 373, 386 (D.N.J. 2014)). Accordingly, the motion to strike class allegations is denied without prejudice to Zoetis's ability to challenge certification at a later stage.

  g. *Leave to Amend*

Although the TAC fails to state claims under the theories asserted, Plaintiffs will be afforded thirty (30) days to amend their pleadings. Accordingly, the TAC is dismissed without prejudice, and Plaintiffs may file a Fourth Amended Complaint within thirty days of the date of this opinion.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**, and the Third Amended Complaint is hereby **DISMISSED WITHOUT PREJUDICE**. Plaintiffs shall have thirty (30) days to file a Fourth Amended Complaint. An

appropriate order follows.

                                                            */s/ Susan D. Wigenton*
                                           **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
        André M. Espinosa, U.S.M.J.